Please be seated. We have six cases on the calendar this morning. A case from the Court of Federal Claims involving insurance, three patent cases from district courts, a veterans case, a government employee case. The latter two are being submitted only in the briefs and will not be argued. The first case is Fidelity and Guarantee Insurance v. United States, 155036, Mr. McConnell. Thank you, Your Honor. May it please the Court, my name is Richard McConnell. I'm counsel for the USF&G companies who are the appellants in this case. Mr. McConnell, this is purely a housekeeping question, but just as a technicality. At page three of your brief, you quote, as it's recited in the record, the addendum to the contract. Yes, Your Honor. And you point out that typos were in the original. I just wanted, can we agree that, as to what it should read, just for the record? If you go to the fourth line down, it says, resulting from, brought for, or, it should be on account of, right? That's correct, Your Honor. And in the last, second to last line, received or sustained by any person or persons should be in there. That's also correct. Okay. Proceed. Those were in the original addendum as it was attached to the contract, and we just didn't alter the language. Okay. No, no, that's fine. I just wanted to make sure, for going forward, we knew what it should be. Absolutely, Your Honor. Okay. The sole issue on appeal in this case is whether the Tucker Act provides jurisdiction in the Court of Federal Claims for USF&G's claim against the government as an equitable subrogate to its insured under the terms of a contract between that insured and the Postal Service. The facts are simple and not in dispute. USF&G's insured Gibbs construction entered into a contract with the Postal Service for asbestos removal and fireproofing work at a building in New Orleans. An addendum to the contract, which we've just talked about, required the government to hold Gibbs harmless from all liability and expense resulting from any personal injury claims attributable to that work. Gibbs completed the work under the contract to the satisfaction of the Postal Service. Mr. McConnell, are you asking us to expand the liability of the government beyond what the case law provides? In other words, is this still beyond Insurance Company of the West? I think it follows Insurance Company of the West, and, in fact, I think this case turns on this Court's decision in Insurance Company of the West. Well, it follows not necessarily the holding in Insurance Company of the West. It follows some language, perhaps. In Insurance Company of the West, the Court addressed the claim of a surety, but the Court's rationale in that case followed the Supreme Court's decision in Aetna. What you do is you really hang your hat, I guess, on the language of 1373 of Insurance Company of the West. The section that starts Aetna reflects a broader and more general applicable concept. That's correct. I'm wondering, Mr. McConnell, if you don't put more weight on that language than it can bear. The point here in this case, Insurance Company of the West, was there was this discussion because in Blue Fox, the Supreme Court had made statements that cast doubt on Balboa's reliance on three earlier Supreme Court cases. The Court in Insurance Company of the West is seeking to explain the basis for equitable subrogation and why a surety can come in and take advantage of jurisdiction in the Court of Federal Claims. I just see that discussion there as really saying, okay, here's an example of why it can come in as a surety. I don't think it can be read as going so far as to allow a liability insurer to come in as a surety does. Particularly, when you look at how in Blue Fox, the Court drew a distinction saying none of the cases relied upon by respondent involve a question of sovereign immunity and none where a subcontractor could sue. That's Blue Fox. You could make the argument that a subcontractor is not that much different from a liability insurer. Finally, in that recent Supreme Court case, Kwai-Fun Wong from this year, the Court draws a distinction between the waiver of sovereign immunity in the Federal Tort Claims Act and what's in the Tucker Act where it says that the Tucker Act is a stronger sovereign immunity provision in the Federal Tort Claims Act. I'm sorry for being long-winded, but it just seems to me that you place a lot of undue weight on that statement in Insurance Company of the West. Now, I'll hush and let you talk. No, that's a useful departure point for me, Your Honor. Let me explain why I believe Insurance Company of the West has to be construed to extend jurisdiction to liability insurers like USF&G here who pay liability claims on behalf of their insurers and are subrogated to the rights of that insured under a government contract. The Tucker Act, like the Federal Tort Claims Act, provides jurisdiction with respect to claims. It doesn't specify who the claimant has to be, and that was a key point that the Court recognized in the decision in Insurance Company of the West. In that case, the Court dealt with assurity, but it dealt with the surety as an equitable subrogate to a government contractor, and I think that case really changed the landscape regarding Tucker Act jurisdiction over claims by equitable subrogates, and here's why I believe that. The case did first look at the viability of an older line of cases beginning with this Court's decision in Balboa that found a waiver of sovereign immunity for equitable subrogation claims by sureties. Balboa relied on a string of Supreme Court decisions in Prairie State, Henningsen, and Perlman, all of which dealt specifically with sureties, and the rationale of Balboa was very tied into their status as sureties. In Insurance Company of the West, this Court found that the rationale of Balboa was no longer viable because of Blue Fox. In Blue Fox, the Supreme Court specifically said that those three cases, those three prior Supreme Court decisions that had been relied upon in Balboa did not, in fact, address questions of equitable subrogation and sovereign immunity. To the contrary, in Insurance Company of the West, this Court stated after Blue Fox, we can no longer rely on those three cases to find a waiver of sovereign immunity, and so the Court was forced to look for a different rationale, and where it looked was the Aetna decision from the Supreme Court in which the Court construed the similar language under the Federal Tort Claims Act, which also focuses on claims, not on the claimant, but on the claim. But isn't there a real distinction between a tort claim and a contract claim in the sense that a contract claim, there are terms and conditions that are all spelled out, there are obligations both ways, quite a different thing than a tort. And when it comes to a waiver of sovereign immunity, the fact that the government has waived sovereign immunity with respect to a contractor that the government is dealing with, or a security that steps in the shoes of the contractor, both with respect to, it's a two-way street with respect to the obligations and liabilities as between the contractor or the security and the government, it seems to me there's quite a distinction there between a claim under the Federal Tort Claims Act and a claim under the Tucker Act. Well, there's a difference between a tort claim and a contract claim. I think we would all agree with that. But as the Court held an insurance company of the West, the two statutes, the Federal Tort Claims Act and the Tucker Act, are similarly constructed. The language is analogous. It deals with claims. And what the Court looked at was the rationale in the Aetna case. In that case, in Aetna, there were first party and liability insurers that paid claims for their insurance, just like USF&G did here. They were subrogated to the rights of those insureds against the government. The accidents or injuries in that case were allegedly caused by the negligence of government employees. And those parties, as equitable subrogates, were allowed to sue the government under the Federal Tort Claims Act. None of the insurers involved in the Aetna decision was a surety. Those were all first party or third party liability insurers that paid claims, just like the claims paid here by USF&G. I think you're accurately describing the background and what the Court said about the similarities in the language between the Tort Claims Act and the Tucker Act. But the fact remains, they are different statutes. And as I mentioned, just recently, Justice Kagan, in that Kung Fu case or whatever it is, just came out this year in April, really made the point that there's a much more certain, definitive, strong, sovereign immunity consideration at work in the Tucker Act than there is in the Federal Tort Claims Act. As I said, she said, you know, the government in the Federal Tort Claims Act is treated like a commoner, as distinguished from how it's treated in the Tucker Act. And I just wonder if... I just don't think there's enough in insurance companies of the West to get over the proposition that it's difficult to see under the Tucker Act a liability insurer coming in. I think that's exactly the opposite of the way the insurance company of the West Court looked at this, Your Honor, because it did view the two statutes as being precisely parallel. It did rely upon the use of the term claim as opposed to claimant in both statutes. But does that really make it... I'm wondering... No, you're correct. Everything you say, you've got the record correct, so to speak. But I just wonder if that really makes a difference. Well, I think it does, because the insurance company of the West decision expressly adopted lock, stock, and barrel, the rationale in Aetna. And the rationale in Aetna addressed, not sure it is, but insurance companies that paid claims for their insurance, just like USF&G did in this case. It's exactly the same situation. And so if insurance company of the West relies on Aetna, then by definition, the sub-brigades that are entitled to Tucker Act jurisdiction under insurance company of the West have to be a broader class than just sureties. I think under Balboa, the argument that you're suggesting might make sense, because Balboa was a more restricted decision. It was based on surety cases from the Supreme Court that we now know from Blue Fox don't involve sovereign immunity questions. That was a different regime, but it's been replaced by insurance company of the West. And I think there's no way to read that decision in light of the Supreme Court's decision in Aetna, other than to say that there is a broader extension of the waiver of sovereign immunity under both statutes, under the Federal Tort Claims Act and under the Tucker Act. In fact, the insurance company of the West court found no reason to give the word claim a different meaning in the Tucker Act than it had in the Federal Tort Claims Act. And the court expressly rejected the government's argument in insurance company of the West that Aetna was distinguishable or that the language of the Federal Tort Claims Act was somehow unique in this respect. And I think, as Your Honor pointed out earlier, the key passage in insurance company of the West is the one you alluded to at page 1373 of the decision. Mr. McConnell, you're well into your rebuttal time. We'll give you three minutes for rebuttal, and we'll now hear from the government. Thank you, Your Honor. Ms. Moore? Good morning, Your Honors. May it please the Court, the Court of Federal Claims, properly dismiss plaintiff appellant's complaint for lack of jurisdiction. Fidelity does not allege the existence of a contract between itself and the Postal Service. Ms. Moore, do you agree with the changes to the language of the contract that we discussed? Oh, I'm sorry, Your Honor. Fidelity alleges that there was an addendum to the contract. The government has not agreed to that, and the government would not agree to that. But to the extent there's a quote of an addendum, well, we're going by the facts that are in the complaint, and it's alleged in the complaint. So, in other words, to the extent the addendum, the purported addendum is quoted in the record, you don't have a problem with the changes, really typographical changes that I suggested. The on instead of no, Your Honor. And the or. And person or persons, Your Honor. Yes. And that is, just for the record, that is a letter dated March 12, 1987. The government, for purposes of its motion to dismiss, accepted certain facts alleged in plaintiff's complaint as true. Not all facts, but certain facts. But regardless, those two changes are the only way that that letter makes any sense. Okay. In order for the trial court to possess jurisdiction, fidelity must fall within one of the limited exceptions to the rule of privity. These exceptions are, one, an intended third-party beneficiary, two, a subcontractor by means of a past-free suit whereby the prime sues on behalf of a subcontractor, or three, a Miller Act surety for funds improperly disbursed to a prime contractor. Well, what is your answer to the argument that Mr. McConnell makes with respect to Insurance Company of the West? Your Honor, it is true that the Aetna case by the Supreme Court explained that the cases relied upon by Balboa in 1985 by this court did not involve an issue of sovereign immunity. They were just stakeholder cases. Yes. And in Insurance Company of the West, therefore, this court looked to a different rationale for upholding the law of equitable separation under Balboa. In other words, this court did not change the holding of Balboa. Instead, on the last page of the Insurance Company of the West decision, it upheld the holding in Balboa, as did the Lumberman's case in 2011 by this court. Instead, this court looked to a different rationale to find the same holding in Insurance Company of the West. And what it did is it looked to the Aetna decision by the Supreme Court, and that case involved only the Federal Tort Claims Act, a suit by four insurers, liability insurers, who had paid claims for individuals who suffered injuries because of the negligence of government employees. The Aetna case did not discuss the Tucker Act, did not mention the Tucker Act. This court in Insurance Company of the West adopted some of the rationale in Aetna and said that express assignments and implied assignments in law could be used for jurisdictional purposes. It did say the Tucker Act had broad language in footnote three of the Aetna decision. It relied on the broad sweep of the language in the Federal Tort Claims Act. Indeed, in the Federal Tort Claims Act, jurisdiction is envisioned by an unknown person who is injured by a government employee. In other words, the government has no idea who may sue it under the Tort Claims Act because it's based on injury at the hands of a U.S. government employee. The Tucker Act has a much more restrictive and narrow language for jurisdiction. Instead, the Tucker Act is based on... This case was brought under the Tucker Act, not under the Contract Disputes Act, correct? This case here, Your Honors? Yes. Yes, brought under the Tucker Act. The Tucker Act has two prongs by which jurisdiction is found. One is the money mandating statute, which plaintiff does not allege at all. Instead, Fidelity alleges that the claims court has jurisdiction under the contract prong of the Tucker Act. The Tucker Act defines a contract claim, meaning a claim based on contract with the United States. In other words, a claimant must have a contract with the United States. Now, as we said, there are three exceptions to that. But Fidelity has not alleged that it is an intended third-party beneficiary, the first exception, nor has it alleged that it's a pass-through claim by the prime contractor, Gibbs. Instead, it relies on the third exception, equitable subrogation. But even that exception, there must be a contractual obligation between the claimant and the government. In other words, it can't be anybody suing. If it were anybody suing without any contractual obligation, the Tucker Act would be defeated. Indeed, subcontractors could sue for that matter. In Lumberman's and Insurance Company of the West and Balboa, this court held very specifically that there must be a contractual obligation. Let me ask you one thing. Would it have been possible here for, as I understand it, what's alleged, we have to go by what's alleged in the complaint, is that the insurance company paid the liability claim of the police officer, Mr. Wilson, correct? The insurance company paid the settlement monies between Gibbs, the prime, and Mr. Wilson. Now, assume for the moment that Gibbs, in fact, paid the claim. Could Gibbs then have, under the contract, come in and said there's a breach of contract because you didn't perform as you were required to do, government, under the addendum? Now, I realize you apparently, I wasn't aware of this dispute, the addendum, but that's not before us in this setting. In other words, Gibbs could it not have come in and said there's an addendum to the contract pursuant to which you are obligated to reimburse me for liability claims for asbestos removal. You haven't done it. I paid X dollars. I'm suing. There you would say, you might contest the merits, but you would say there there was jurisdiction, correct? You wouldn't fight jurisdiction. Your Honor, Gibbs did submit a claim to the contracting officer based on the purported addendum. And yes, Gibbs could have appealed conceivably that final decision to the Court of Federal Claims. And you would have said jurisdiction is fine there? Probably, Your Honor. We can't say for sure at this point. Because they'd be suing under the contract. But they'd be suing under the contract. Yes, they would be suing. If Gibbs had appealed within a year of the final decision of January 29, 2013 to the Court of Federal Claims, then they would have had a lawsuit in the Court of Federal Claims against the government. Gibbs did not do that. Under the addendum? No, we're not getting into the merits of it. I'm just saying, assuming the addendum is part of the contract, and assuming Gibbs had paid the claim of the injured person from the asbestos, and assuming there was a contracting officer's decision, whatever, it could have come in. Gibbs could have sued based on that scenario. Within one year of receiving the contracting officer's final decision. Now, you said this wasn't a contract dispute case, or it was? This is a CDA contract, yes. I thought you said it was Tucker Act. Well, the CDA is a statute that allows a contractor to sue in the Court of Federal Claims, to appeal a final decision within one year. Fidelity is not suing under the CDA. Fidelity is suing under a contract theory. Fidelity is suing, saying, we can step into the shoes of Gibbs and sue the government under Gibbs' contract, which is a CDA contract. In Lumberman's, the surety did take over performance, finance, completion of performance. I'm sorry, the surety did take over completion of performance in Lumberman's. The Court held that Lumberman's had to submit a CDA claim to the contracting officer in that case. Here, Fidelity, though, is not even a surety. Fidelity did not have any obligation towards the government in contract, nor vice versa. It's because of that reason that Fidelity is not an equitable subrogate to Gibbs. That's what the Court of Federal Claims properly held. How does a surety, when you have a CDA, because in Fireman's Fund insurance, we said that a surety is not a contractor under the CDA. How does a surety under a contract, a disputes act contract, properly come in in the Court of Federal Claims? Your Honor, in that case, Fireman's Fund was not the contractor and didn't have standing. If Fireman's Fund were a surety that took over performance of the contract upon default by the prime, then the surety, if it actually takes over performance rather than finances performance, it enters into a contract, a takeover agreement with the government. That takeover agreement becomes the contract between that surety and the United States. Here, Fidelity is by no stretch of the imagination a surety. What if it funds the contract? If it funds the contract? If it funds... If it finances completion of the contract? The insurance company of the West, I think there was a statement there that a surety could obtain jurisdiction by stepping in and giving money to the contractor to perform the contract. Yes, an insurance company of the West, Your Honor, insurance company of the West financed completion of the contract. That allowed it to become an equitable subrogate. It was only upon default... That was a CDA contract also? An insurance company of the West, I believe so. Only upon default by the prime and a surety stepping into the shoes of the prime with respect to the prime's obligation towards the government, i.e. by financing a completion contract by another contractor or actually performing the contract for the government, does a surety become an equitable subrogate. It's not simply because a surety has the title surety that it can become an equitable subrogate. There must first be a default by the prime contractor and its performance. Secondly, the surety must step into the shoes of the prime either by financing completion of that contract or completing it itself towards the government. Fidelity doesn't allege any of those things. It's not a surety. There was no default by the prime, nor did Fidelity enter into any obligation towards the U.S. government. If the decision here stands, what impact do you think this will have in terms of government contractors obtaining general liability coverage in the future? Well, I believe it's something that's pervasive, Your Honor, that they already do obtain such coverage. Some contracts require the coverage, and a prime contractor being a prudent prime, I would think most of them would have general liability coverage just for their own employees' actions, if nothing else. To what extent will insurance companies be interested in providing that coverage if they have no assurance of being entitled to sue as a subrogate? Your Honor, they've never been entitled to sue, so nothing would change, really. Up to now, they've never been entitled to sue, and should that not change, then nothing really would change, and primes most often have gotten insurance policies for general liability insurance. If the insurer pays an insurance claim, as Fidelity did here, the insurer could sue the insured, for that matter. If it felt that the insured breached the contract, it could either not pay, and they could have litigation between themselves, or it could maybe pay with a conditional payment or something, but it's really between the insurer and the prime contractor as to what transpires between them. And, of course, that's a contract, so that would be dealt with in the appropriate legal venue for that. For these reasons, Your Honors, we respectfully request that the Court affirm the decision of the Court of Federal Claims. Thank you, Ms. Moore. Mr. McConnell, we'll give you three minutes of rebuttal. Thank you, Your Honor. Let me answer your question, Judge Land. If that decision stands, to the extent insurance is available for this kind of project, it will be more expensive, and those costs eventually would be passed along to the government. But the law won't change, will it? Excuse me, Your Honor? The law will not have changed. We think it will, because we read Insurance Company of the West, which has now been out there for a number of years, as affording an opportunity for companies in USF&G's position to bring an action under the contract as an equitable subrogate. Mr. McConnell, you would agree that there's no case right now. I mean, you read Insurance Company of the West as supporting your position, as you've argued in your brief since today. But I think you would agree, because I haven't been able to find any case that says a liability insurer can do what you're seeking to do in this case. I'm not aware that this issue has ever been before this Court. So I guess it's your position that there's never been a case that says you would not be entitled to subrogation. That's absolutely correct, Your Honor. We think Insurance Company of the West says we can. Just a couple of quick points, and I'm mindful of the time. The government continues to rely on what they call limited exceptions to the privity requirements that were in existence prior to Insurance Company of the West. For the reasons I discussed earlier, I think Insurance Company of the West necessarily extended those exceptions to equitable subrogates like USF&G here that pay claims for their insured. There's no other way to read that case in light of its reliance upon Aetna. Secondly, the court below asserted that USF&G had not stepped completely into the shoes of the contractor. I think that assertion is contrary to longstanding black-letter law, which recognizes that equitable subrogates do step into the shoes of another person. We've cited a number of cases, including First National City Bank from the Court of Claims, U.S. Airways v. McCutcheon Supreme Court two years ago, which said subrogation simply means substitution of one person for another. That is, one person is allowed to stand in the shoes of another. That's exactly what's happening here. When it paid the claim, USF&G did step into the shoes of its insured. Third, in this case, USF&G, as an equitable subrogate, stands in the shoes of Gibbs with respect to its claim under the Hold Harmless provision. As Your Honor implied, Judge Shull, recognizing jurisdiction under the Tucker Act won't expand the scope of the government's liability at all. Gibbs would have a claim under this Hold Harmless provision. If USF&G had not stepped in and paid the claim, Gibbs would be able to pursue a claim against the government under the contract. But as the case is positive, I guess the insurance company, your client, paid the claimant, and that's why you're advancing the claim. That's correct, Your Honor. USF&G is now the real party in interest. And that's why we're here. USF&G claims no more than Gibbs was entitled to. We're not seeking to expand the scope of the liability. We're simply seeking to enforce the right under the contract as an equitable subrogate. And so we would ask that the decision below be reversed and the case remanded for proceedings on the merits. Thank you.